UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

DARVIN ODNEY,

Plaintiff,

-against-

AMERICAN AIRLINES FEDERAL CREDIT UNION,

Defendant.

-----------------------------------x

**MEMORANDUM & ORDER**
25-CV-4753 (EK)(RML)

ERIC KOMITEE, United States District Judge:

Plaintiff Darvin Odney brings this action under the Fair Credit Reporting Act. Proceeding *pro se*, Odney alleges that American Airlines Federal Credit Union furnished inconsistent information about his payment and delinquency history to credit reporting agencies. Odney claims that such reporting, in turn, resulted in his being denied certain loans. He further alleges that AAFCU failed to correct its reporting after investigation and that his credit reports should therefore reflect an active dispute status. For the reasons that follow, Odney's complaint is dismissed for lack of standing.

## I. Background

The following facts are drawn from the complaint and the exhibits attached thereto. We "accept[] as true all material factual allegations of the complaint . . . and draw[]

all reasonable inferences in favor of the plaintiff." *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56-57 (2d Cir. 2016).[1]

Odney opened a "revolving credit card account" and an "installment account" with American Airlines Federal Credit Union ("AAFCU") in December 2022. Compl. ¶ 3, ECF No. 1. Shortly afterward, Odney accrued balances of $1,155 on the credit card account and $2,500 on the installment account. *See id.* at Ex. D. Odney failed to make timely payments on both accounts, and AAFCU subsequently reported them in charge-off status. *See id.* ¶¶ 10-13.

Odney "does not deny that the accounts became delinquent," Pl.'s Opp'n Br. 1, ECF No. 18, but instead points to certain discrepancies in the way that different credit agencies report on the status of the AAFCU accounts. Compl. ¶¶ 18-20. More specifically, CRAs report slightly different "major delinquency first reported" and "last payment made" dates for his AAFCU accounts. *Id.* ¶¶ 11-13, 19-20. The CRA reports also differ as to how long the AAFCU accounts will remain "on record," *id.* ¶ 18, meaning how much longer the adverse credit information may be reported under the Fair Credit Reporting Act. *See Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1111

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

(2d Cir. 1992) (citing 15 U.S.C. § 1681c). Based on these discrepancies, Odney infers — though not necessarily plausibly — that AAFCU furnished CRAs with inconsistent information regarding his accounts. *E.g.*, Compl. ¶¶ 17, 21.

Odney further alleges that AAFCU failed to correct the discrepancies in response to his complaints. *Id.* ¶¶ 11-20. He filed two complaints with the National Credit Union Association and a dispute with the CRAs. *Id.* ¶¶ 14-15. But, per Odney, AAFCU failed to conduct a reasonable investigation. *E.g.*, *id.* ¶ 21. He contends that, so long as the discrepancies among CRAs remain unresolved, his credit reports should not indicate an "investigation complete" status. *Id.* ¶¶ 16, 25.

Odney also claims that, because of "AAFCU's inaccurate reporting and failure to reasonably reinvestigate and correct" his account information, he was denied credit for a new vehicle purchase in September 2024. *Id.* ¶ 21; *see also* Resp. to O.S.C. 2-3, ECF No. 20 (citing credit denials from "[t]hree separate lending institutions"). He also alleges that he had to "proceed with a less-favorable pre-owned purchase" — of a vehicle that broke down and caused him to miss work, resulting in emotional distress. Compl. ¶ 21.

Odney filed the instant action in September 2025. *See* ECF No. 1. AAFCU moved to dismiss the complaint on February 4, arguing that Odney has not stated a claim under the Fair Credit

Reporting Act and previously agreed to arbitrate any dispute arising from his relationship with AAFCU. *See generally* Def.'s Br., ECF No. 17. On August 17, the Court ordered Odney to show cause why his case should not be dismissed for lack of standing. Odney responded on August 21. *See* ECF No. 20. We now proceed to determine our jurisdiction (or the lack thereof) even prior to contemplating questions of arbitrability.[2]

## II. Discussion

The Court "must construe *pro se* pleadings broadly and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

"Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211

---

[2] The Fifth Circuit has explicitly held that "motions to compel arbitration are not one of the limited instances in which district courts have leeway to pretermit the resolution of jurisdictional challenges." *Hines v. Stamos*, 111 F.4th 551, 566 (5th Cir. 2024); *see also Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) (motion to transfer must be decided before motion to compel arbitration). This makes good sense, given that granting a motion to compel arbitration does not result in dismissal of the action. *See Hines*, 111 F.4th at 565 (citing *Smith v. Spizzirri*, 601 U.S. 472, 477-79 (2024)). While the Second Circuit apparently has not directly addressed this question, we see no reason to depart from the general rule that standing is "the threshold question in every federal case." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).

(2d Cir. 2020). And "a case or controversy can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). Therefore, if a plaintiff lacks standing, the court "lacks the power to adjudicate the merits of [his] case," and must dismiss it. *Carter*, 822 F.3d at 54-55. Because standing is a component of subject-matter jurisdiction, "[i]t is well-established that a district court may raise the issue of standing *sua sponte*." *In re Indu Craft, Inc.*, 630 F. App'x 27, 28 (2d Cir. 2015).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]s the party invoking federal jurisdiction," Odney "bears the burden of establishing these elements." *Id.* At the pleading stage, Odney "has no evidentiary burden." *Carter*, 822 F.3d at 56. It is sufficient for him to "allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338.

Odney has not done so here. While he has adequately alleged an injury in fact, he has not plausibly alleged that his injury is traceable to AAFCU's alleged misreporting. Accordingly, his complaint must be dismissed for lack of standing.

Taking the facts in Odney's complaint as true, he has satisfied the injury-in-fact requirement. That element "requires a plaintiff to allege an injury that is both concrete *and* particularlized." *Spokeo*, 578 U.S. at 334. Here, Odney alleges that he received several credit denials for auto-financing and other loans. *See* Compl. ¶ 21; *id.* at Exs. M-1, M-2, M-3. A "denial of credit" is a sufficient injury for standing purposes. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021). Accordingly, we need not address the sufficiency of Odney's other alleged injuries. *See* Compl. ¶ 21.

But Odney has not demonstrated that AAFCU's alleged misreporting *caused* his injury. The traceability element requires a plaintiff to show a "line of causation between the illegal conduct and injury" that is not "too speculative or attenuated." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). Here, the credit denials — which Odney attached to his complaint — explain the lenders' reasoning, including: "garnishment, public records, charge off activity, or settlement," "limited credit history," "foreclosure, repossession, collection action or judgement," and "highest balance on accounts." Compl. Exs. M-1, M-2, M-3. "[C]harge off activity" presumably refers to the AAFCU accounts. *See* Resp. to O.S.C. 1. But Odney concedes "that the [AAFCU] accounts became delinquent." Pl.'s Opp'n Br. 1. And none of the more minor

inconsistencies that form the basis of his claim against AAFCU is cited in any of the credit denials. Nor does he draw the "line of causation" in his complaint. As such, he has alleged no facts, apart from his own conclusions, to satisfy the traceability element of standing.

## III. Conclusion

For the foregoing reasons, Odney's complaint is dismissed without prejudice. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing . . . that disposition cannot be entered with prejudice . . . .").

Because Odney is proceeding *pro se*, he may — on or before September 25 — file an amended complaint that corrects the deficiencies identified herein. He is further advised that any amended complaint will completely replace the original complaint, that it must be captioned "Amended Complaint," and that it must bear the same docket number as this order: 25-CV-4753 (EK)(RML). If Odney does not file an amended complaint by the date specified, the Clerk of Court will enter judgment and close the case. The Clerk is respectfully directed to mail a

copy of this order to Odney and to note the mailing on the docket.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 8, 2026
Brooklyn, New York